**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PINNACLE INSURANCE &
FINANCIAL SERVICES, LLC,

                    Plaintiff,

vs.                                   Case No.  3:16-cv-546-J-34JBT

NORMAN R. SEHNOUTKA, JR.,
DEBORAH HERSEY, and
NORMAN R. SEHNOUTKA, JR., CLU,
CHFC, LLC,

                    Defendants.
_____/

# O R D E R

     **THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Third Amended

Complaint (Doc. No. 31; Motion), filed on October 14, 2016.  In the Motion, Defendants

Norman R. Sehnoutka, Jr. (Sehnoutka[1]), Deborah Hersey (Hersey) (together, the Individual

Defendants), and Norman R. Sehnoutka, Jr., CLU, CHFC, LLC (Sehnoutka LLC)

(collectively, Defendant(s)) request that the Court dismiss this action pursuant to Rule

12(b)(2), Federal Rules of Civil Procedure (Rule(s)), based on a lack of personal jurisdiction,

as well as under Rule 12(b)(6) for failure to state a claim for declaratory relief.  See Motion

at 1.  In support of the Motion, Defendants attached the affidavits of Sehnoutka and Hersey.

See Motion, Ex. 4: Affidavit of Norman R. Sehnoutka, Jr. (Doc. No. 31-1; Sehnoutka Aff.);

Motion, Ex. 5: Affidavit of Deborah Hersey (Doc. No. 31-1; Hersey Aff.).  On October 28,

2016, Plaintiff Pinnacle Insurance & Financial Services, LLC (Pinnacle) filed its Response

---

    [1]     The Court will refer to Norman R. Sehnoutka, Jr., by his last name and to the limited
liability company that shares his name as "Sehnoutka LLC."

in Opposition to Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. No. 32; Response).   Additionally, in support of its position that the Court has personal jurisdiction over each of the Defendants, Pinnacle filed the Declaration of Jim Ludwick (Doc. No. 33-1; Ludwick Decl.), the Declaration of Luigi Montolio (Doc. No. 33-2; Montolio Decl.), and the Declaration of Toni Freeman (Doc. No. 33-3; Freeman Decl.), together with a number of accompanying exhibits.   Accordingly, this matter is ripe for review.

## I.      Applicable Law

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."   See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).   Where a defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'"   See id. (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).   In ruling on a motion to dismiss for lack of personal jurisdiction, a district court has discretion to conduct an evidentiary hearing.   See Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988).   However, where the court does not conduct a hearing, "the plaintiff must present only a prima facie showing of . . . personal jurisdiction."   Id.   Here, upon consideration of the Motion and Response, the Court determines that an evidentiary hearing is not warranted.   Thus, the Court considers whether Pinnacle has made a prima facie showing of facts sufficient to warrant the exercise of personal jurisdiction over the Defendants.

A plaintiff makes a prima facie showing by presenting evidence sufficient to withstand a motion for directed verdict on the issue of personal jurisdiction. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). Thus, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits[,]" and "where the evidence presented by the parties' affidavits . . . conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." Id. (citing Delong Equip. Co., 840 F.2d at 845); see also United Techs. Corp., 556 F.3d at 1274 (citing Polskie Linie Oceaniczne v. Seasafe Transp. A/S, 795 F.2d 968, 972 (11th Cir. 1986)) (noting that, if the defendant rebuts the jurisdictional allegations in the plaintiff's complaint, "the plaintiff is required to substantiate [its] jurisdictional allegations [] by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.").

"A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006). Thus, to determine whether personal jurisdiction exists over a defendant, the Court must engage in a two-part inquiry. See Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004). First, the Court must determine "whether the exercise of jurisdiction is appropriate under [Florida]'s long-arm statute." Id. (citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996)). Second, the Court must consider whether exercising personal jurisdiction over a defendant "would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the

exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Sculptchair, Inc., 94 F.3d at 626). "Only if both prongs are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996) (internal quotations omitted).

Turning to the first prong, Florida's long arm statute – Florida Statutes section 48.193 – confers two types of jurisdiction. See NW Aircraft Capital Corp. v. Stewart, 842 So. 2d 190, 193-95 (Fla. Dist. Ct. App. 2003). First, section 48.193(1) lists enumerated acts which will confer specific personal jurisdiction over a defendant for suits arising from those acts. See Fla. Stat. § 48.193(1). Next, section 48.193(2) "provides that Florida courts may exercise general personal jurisdiction" if the defendant engages in "substantial and not isolated activity in Florida[,]" whether or not the claims asserted actually involve the defendant's activities in Florida. See Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1203-04 (11th Cir. 2015) (emphasis in original). Here, Pinnacle does not allege that the events giving rise to this action confer specific personal jurisdiction over any of the Defendants. See Third Amended Complaint (Doc. No. 28; TAC) ¶ 7. As such, the Court need only determine whether it can assert general jurisdiction over any Defendant pursuant to section 48.193(2). Notably, "[t]he reach of [section 48.193(2)] extends to the limits o[f] personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." Carmouche, 789 F.3d at 1204 (quoting Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010)). Thus, to determine whether the Court has general jurisdiction over any Defendant pursuant to section 48.193(2), the Court "need only determine whether [its] exercise of jurisdiction

over [that Defendant] would exceed constitutional bounds." Id. (quoting Fraser, 594 F.3d at 846); see also Schulman v. Inst. for Shipboard Educ., 624 Fed. Appx. 1002, 1005 (11th Cir. 2015) (per curiam) (adopting and applying the same standard).

## II.     Background Facts[2]

Pinnacle is a Florida limited liability company, see Third Amended Complaint (Doc. No. 28; TAC) ¶ 1, "comprised of a team of . . . professionals who assist financial advisors in developing and delivering life insurance and annuity solutions to their clients[,]" see Response at 1.  Sehnoutka LLC is an Illinois limited liability company with its principal place of business in Geneva, Illinois.  TAC ¶ 5.  Sehnoutka LLC's business is the sale of insurance and annuity products through contacts with financial advisors located primarily in Illinois, Indiana, Iowa, Michigan, Minnesota, and Wisconsin.  See Sehnoutka Aff. ¶¶ 6-7, 10. Sehnoutka – the sole member and former manager of Sehnoutka LLC – and Hersey – an independent contractor affiliated with Sehnoutka LLC – are citizens of Illinois and Minnesota, respectively.  See TAC ¶¶ 3-4; Sehnoutka Aff. ¶ 3; Hersey Aff. ¶ 4.

On or about March 15, 2012, Pinnacle and Sehnoutka – acting on behalf of Sehnoutka LLC – executed a written Letter of Understanding (LOU) for the purpose of "establish[ing] a national selling agreement" for insurance policies whereby Sehnoutka LLC

---

[2]     For purposes of ruling on this Motion, in which Defendants seek dismissal of this action on the basis of a lack of personal jurisdiction, the Court "'must accept the facts alleged in the complaint as true, to the extent they are uncontroverted'" by Defendants' affidavits. See Snow v. DirecTV, Inc., 450 F.3d 1314, 1317 (11th Cir. 2006) (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)). Because Defendants challenged Pinnacle's jurisdictional allegations via affidavits, Pinnacle was required to substantiate its allegations through affidavits or other evidence of its own. See Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam).  In doing so, Pinnacle had to "do more than merely reiterate the factual allegations in its complaint." Id. (citation and internal quotations omitted).  Where Pinnacle met this burden, and where Pinnacle and Defendants' affidavits are in true conflict, the Court "must construe all reasonable inferences in [Pinnacle's] favor." See Snow, 450 F.3d at 1317.

would utilize Pinnacle's "strategic relationships" to find potential clients and make sales.  See TAC ¶ 10; Motion, Ex. 1-A.[3]  Pursuant to the LOU, which the parties subsequently amended on or around June 5, 2014, Pinnacle was to "provide [Sehnoutka LLC] prospective names from these [strategic] relationships with the intent that [Sehnoutka LLC] would develop additional sources of revenue from such relationships[,]" at which point Sehnoutka LLC would be entitled to a commission in an amount that varied based on the circumstances of the sale.  See TAC ¶ 11; Motion, Ex. 1-A, 1-B.  In other words, Sehnoutka LLC's role under the agreement was to sell insurance policies "created and developed by insurance carriers with whom Pinnacle ha[d] master agreements" using leads generated by Pinnacle.  See Sehnoutka Aff. ¶ 8.  The LOU also contained provisions regarding its termination and enforcement, as well as a non-solicitation covenant; and the rights and obligations of the parties pursuant to these provisions are at issue in this action.  See generally TAC; Motion; Response.  On December 17, 2015, Pinnacle terminated the LOU and notified Defendants that they were to "discontinue representing [Pinnacle] with every Pinnacle relationship."  See TAC ¶ 15; Motion, Ex. 1-C.

On September 30, 2016, Pinnacle filed the TAC, in which it asserts one claim for breach of contract against Sehnoutka LLC (Count I) and another for declaratory relief against both Sehnoutka LLC and the Individual Defendants (Count II).  See generally TAC.  Specifically, with regard to Count I, Pinnacle alleges that Sehnoutka LLC, through its

_____

[3]     The LOU expressly stated that its purpose was to establish a "national selling agreement" between Pinnacle and Sehnoutka LLC.  See Motion, Ex. 1-A.  However, for reasons unclear to the Court, Pinnacle used Sehnoutka's individual name as the defined term for Sehnoutka LLC, and did not provide a line on the signature page for Sehnoutka to indicate that he was signing the agreement in his representative capacity on behalf of Sehnoutka LLC.  See id.

"authorized agents" – the Individual Defendants, breached the non-solicitation provision of the LOU by "contact[ing], ma[king] sales to, and accept[ing] business from producers or field representatives deemed by Pinnacle to be proprietary[,]" and by "solicit[ing] business with national accounts sourced by Pinnacle that were not submitted through Pinnacle." Id. ¶ 18. Pinnacle further alleges that Sehnoutka LLC and the Individual Defendants "falsely represented to customers of Pinnacle, including Raymond James[4] [], that Pinnacle is no longer doing business with Raymond James and other customers . . . in furtherance of their attempt to solicit business in breach of the [LOU's] restrictive covenants." Id. ¶ 19.  As for the declaratory judgment claim in Count II, Pinnacle alleges that it is in doubt about its rights and obligations under the LOU based on Defendants' demands for "alleged past due amounts as well as demands for payments in the future . . .". Id. ¶¶ 27, 31.

With regard to jurisdiction, Pinnacle alleges that the Court has general personal jurisdiction over all Defendants pursuant to section 48.193(2), Florida Statutes, which states that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  See Fla. Stat. § 48.193(2); TAC ¶ 7.  In support of this contention, Pinnacle alleges that: (1) Defendants sell and solicit for sale life insurance products "that are processed for financial advisors

---

4       Raymond James is a financial services firm with its corporate headquarters in Tampa, Florida.  See Ludwick Decl. ¶ 40.  Defendants' business relationship with Pinnacle provided Defendants "access to sell life insurance products to [the clients of] financial advisors who work for Raymond James and other financial institutions." Id. ¶ 39.  According to Jim Ludwick (Ludwick) – the President and CEO of Pinnacle – this is significant because Pinnacle is one of only eight firms nationwide with permission to sell insurance through Raymond James' advisors. Id. ¶ 11.  Ludwick further asserts that a "significant amount" of Defendants' sales can be attributed to clients of Raymond James, and that all processing and approvals for new insurance plans issued through Raymond James occurred at the Tampa, Florida headquarters of Raymond James.  See id. ¶¶ 39-41.

whose broker/dealers have a home office in Florida"; (2) the Individual Defendants traveled to Pinnacle's office in Jacksonville, Florida, for business meetings no less than eight times between March of 2012 and September of 2015; and (3) Pinnacle paid commissions directly to Hersey, individually, for a period of time.  See TAC ¶¶ 7-9.

## A.    Sehnoutka LLC[5]

Sehnoutka maintains that Sehnoutka LLC is an Illinois company with its principal place of business in Illinois that is "engaged in the business of selling insurance, primarily life insurance and annuity products" to the clients of financial advisors of broker/dealers located in various Midwestern states.  Sehnoutka Aff. ¶¶ 3, 6.  Sehnoutka LLC also works with independent contractors who sell insurance products using their own relationships with financial advisors; however, according to Sehnoutka, "neither Sehnoutka LLC, nor the independent contractors with whom it does business, solicit to sell or sell insurance products" to Florida residents.  See id. ¶¶ 7-8.  Regarding Sehnoutka LLC's business operations under the terms of the LOU, Sehnoutka maintains that Sehnoutka LLC did not sell life insurance plans developed by Pinnacle, and that Pinnacle's limited involvement in the sales process was to "respond to requests for life insurance and annuity quotes from Sehnoutka LLC" based on information provided to Sehnoutka LLC by the clients of affiliated financial advisors.  Id. ¶ 21.  Sehnoutka further attests that: (1) Sehnoutka LLC conducted the majority of the work for its clients from its home office in Illinois; (2) Sehnoutka LLC gained significant business from only two 'leads' provided by Pinnacle, one in Wisconsin and

---

[5]    The Court will first address the parties' jurisdictional contentions with respect to Sehnoutka LLC – the corporate defendant – and then turn to any allegations separately directed at the Individual Defendants.

another in Illinois; (3) Sehnoutka LLC did not market any of Pinnacle's services to financial advisors or their clients, and instead marketed life insurance products designed by third-party insurance carriers; (4) Sehnoutka LLC did not use any marketing materials provided by Pinnacle; (5) Sehnoutka LLC never mentioned Pinnacle or its services during the sales process; and (6) Sehnoutka LLC's affiliated financial advisors – including those employed by broker/dealer Raymond James – and their clients were all located in Midwestern states and not in Florida.  See id. ¶¶ 22-27, 33.

According to Sehnoutka, Pinnacle played only a minor role in the process of selling insurance policies.  See id. ¶ 28.  As part of this process, Pinnacle employees would occasionally assist with preparing quotes and "illustrations"[6] using data and other information provided by Sehnoutka LLC.  Id. ¶ 28(a).  Later, once the client and the client's financial advisor completed an application for coverage, Sehnoutka LLC would send the application to a case manager at Pinnacle who would, in turn, submit the application to the third-party insurance carrier and assist in determining what – if anything – was required to fully complete the application.  See id. ¶¶ 28(c)-(e).  Then, once the insurance carrier issued the policy, the carrier would deliver the policy to Pinnacle for return to Sehnoutka LLC, the client, and his or her financial advisor for execution, at which point the executed policy would be sent back to both Pinnacle and the insurance carrier.  See id. ¶ 28(f).  The insurance carrier would then pay out a commission to Pinnacle, a portion of which would be direct-deposited into Sehnoutka LLC's operating account or, when appropriate, Hersey's individual business

---

[6]   "Illustrations" can be defined in this context as "documents that accompany [insurance] applications [which] are used to illustrate all of the variables in an insurance contract to ensure the client understands what he or she is purchasing."  Ludwick Decl. ¶ 31.

account.  See id. ¶ 28(g).  As a result of Pinnacle's purportedly limited involvement in this process, Sehnoutka maintains that Pinnacle and Sehnoutka LLC (including the Individual Defendants), "rarely, if ever, interacted via telephone or e-mail in any extensive [] manner." Id. ¶ 29.  Lastly, Sehnoutka avers that Pinnacle never provided Sehnoutka LLC with any proprietary or trade secret information,[7] managerial training or assistance, supervision of daily operations, or general problem-solving assistance.  See id. ¶¶ 34, 36.

In response, Ludwick has presented a declaration in which he contends that "Pinnacle had significant oversight over [Defendants] in their roles as contractors of Pinnacle[,]" specifically in regard to ensuring compliance with Raymond James' rules and requirements for the marketing and sale of insurance products through Raymond James. See Ludwick Decl. ¶¶ 12-13; 23.  For example, according to Ludwick, the Individual Defendants were provided Pinnacle business cards and were required to represent themselves as representatives of Pinnacle "in all written, electronic, and verbal communications[,]" particularly when interacting with Raymond James financial advisors. Id. ¶¶ 14-16; see also Montolio Decl. ¶¶ 3-5.  Ludwick further asserts that Pinnacle was involved in the "bulk of the work" in processing applications for insurance submitted by Sehnoutka LLC as well as in designing, structuring, and ultimately selecting the insurance policy or polices to be offered to clients for purchase.[8]  See Ludwick Decl. ¶¶ 19-21; see also

_____

[7]    Specifically, Sehnoutka states that "[a]ny customer relationships or contacts that Pinnacle is claiming to be 'proprietary' are publicly disclosed on the individual broker[/]dealer websites [and] Pinnacle's alleged 'trade secret' insurance design process is publicly available on its own website." Id. ¶ 35.

[8]    Pinnacle views its involvement with processing insurance applications as more substantial than what is described by Defendants.  According to Pinnacle, upon receipt of an insurance application, Pinnacle would review the application for "completion and compliance" with any necessary
(continued...)

Montolio Decl. ¶ 6.  To this end, Ludwick avers that Pinnacle provided Sehnoutka LLC with "necessary paperwork, marketing materials, forms, and other documents" for clients and financial advisors to use in completing the insurance applications that would then be returned to Pinnacle for processing.  See Ludwick Decl. ¶ 24.  Ludwick maintains that this case management and insurance design process generally involved at least weekly communications with Sehnoutka LLC, especially for the purpose of "problem solving" issues with the applications.  See id. ¶¶ 22, 24, 35-37.

In addition to providing oversight, which necessitated frequent communication between the parties – including at least two scheduled weekly calls and "almost daily e-mail exchanges" – Ludwick states that Pinnacle provided Sehnoutka LLC with a number of services, including, but not limited to: (1) lead generation and appointment scheduling; (2) follow-up assistance on sales leads; and (3) the creation of marketing materials to use in making sales.  See id. ¶¶ 43, 45-46; see also Montolio Decl. ¶¶ 8, 9, 11; Freeman Decl. ¶ 14.  Ludwick also maintains that Pinnacle provided "proprietary trade secret information" to Defendants in the form of "customer relationships and customer contacts, as well as information regarding Pinnacle's insurance design process."  Ludwick Decl. ¶ 47.

---

[8](...continued)
requirements, a process which often required substantial effort and further communication with Sehnoutka LLC.  Freeman Decl. ¶¶ 5-6.  Once complete, Pinnacle would forward the application to the broker/dealer's compliance department and then to the insurance carrier for approval.  Id. ¶¶ 7-8.  After the carrier sent the issued policy to Pinnacle for review, Pinnacle would transmit the policy to Sehnoutka LLC and the other necessary parties for execution.  Id. ¶¶ 9-11.  The executed policy would then be returned to Pinnacle so that Pinnacle could secure the commission due from the insurance carrier.  See id. ¶¶ 11-12.  On the whole, the Court notes that this process appears substantially similar – albeit explained in greater detail – to that which Defendants described.

### B.     The Individual Defendants

Sehnoutka resides in Illinois and has never been a Florida resident.  Sehnoutka Aff.

¶ 2.  He is not licensed to sell – and does not sell – insurance or other products in Florida

or to Florida residents, nor does he operate, conduct, engage in, or carry on any business

in Florida.  Id. ¶ 9.  Indeed, Sehnoutka avers that all of his business activities are conducted

in the states of Illinois, Indiana, Iowa, Michigan, Minnesota, and Wisconsin.  Id. ¶ 10.  With

respect to the LOU, Sehnoutka asserts that he executed the agreement and its addendum

in his capacity as manager of Sehnoutka LLC and not individually.  See id. ¶¶ 13-14, 20.

Similarly, regarding his travels to Florida, Sehnoutka states that, in March of 2012, he first

traveled to Pinnacle's Florida office – at Pinnacle's request – solely in his capacity as

manager of Sehnoutka LLC for the purpose of discussing the terms of entering into a

business relationship whereby Sehnoutka LLC would sell insurance products marketed and

distributed by Pinnacle.  Id. ¶¶ 11-12.  Subsequently, in January of 2013, 2014, and 2015,

Sehnoutka traveled to Florida in furtherance of the business of Sehnoutka LLC to attend

Pinnacle's annual kickoff meetings, and in June of 2012, July of 2013, July of 2014, and

September of 2015, Sehnoutka traveled to Florida to also attend Pinnacle's annual sales

meetings.  See id. ¶¶ 18-19.

Hersey resides in Minnesota and also has never been a resident of the state of

Florida.  Hersey Aff. ¶ 2.  Hersey states that she is "self-employed as a sole proprietor

engaged in the sale of insurance products to clients in Minnesota, Wisconsin, and Iowa" and

that she provided services to Sehnoutka LLC as an independent contractor, meaning she

was never "a member, officer, or employee of Sehnoutka LLC."  See id. ¶¶ 3-4; see also

Sehnoutka Aff. ¶¶ 15-16.  In addition, Hersey maintains that she is not licensed to sell – and does not sell – insurance or other products in Florida or to Florida residents, nor does she conduct, engage in, or carry on any business activity in Florida.  Hersey Aff. ¶ 5.  With respect to the LOU, Hersey avers that "she is not a party to the Agreement and at no time agreed to be bound by its terms."  Id. ¶ 8; see also Sehnoutka Aff. ¶¶ 20.  Regarding her travels to Florida, Hersey states that she initially accompanied Sehnoutka to Pinnacle's Jacksonville, Florida, office in March of 2012 at his request, and that her subsequent visits for additional meetings were "in furtherance of the business of Sehnoutka LLC, and never in [her] individual capacity."  Hersey Aff. ¶ 6; see also Sehnoutka Aff. ¶ 18.  Lastly, addressing the issue of her commissions, Hersey notes that – beginning in or about June of 2013 – Sehnoutka LLC requested that Pinnacle begin paying Hersey directly to reduce its own administrative burden, but also avers that these commissions were nothing more than what she had earned "as an independent contractor providing insurance sales services to Sehnoutka LLC."  Hersey Aff. ¶ 7; see also Sehnoutka Aff. ¶ 17.  In other words, Hersey maintains that neither she nor Sehnoutka ever charged individual services to Pinnacle, as all services were provided on behalf of Sehnoutka LLC.  See Hersey Aff. ¶ 7.

In support of Pinnacle's contention that general jurisdiction exists with respect to the Individual Defendants, Ludwick primarily asserts that – after the termination of the LOU – Pinnacle received three demand letters from counsel for the Individual Defendants seeking unpaid compensation allegedly owed under the LOU.  See Ludwick Decl. ¶¶ 52-54, Ex. G (Demand Letters).  Notably, according to Ludwick, these Demand Letters failed to mention Sehnoutka LLC and instead referenced "personal claims for commissions[,]" thereby

contradicting the Individual Defendants' assertions that they only provided services on behalf of Sehnoutka LLC pursuant to the LOU.  See id. ¶¶ 55-56.  With regard to Hersey, Ludwick adds that she acted as an agent of Sehnoutka and/or Sehnoutka LLC in the performance of the LOU.  Id. ¶ 7.  In support of this contention, Ludwick notes that Hersey regularly utilized Pinnacle to provide illustrations.  Id. ¶ 30.

Having outlined the parties' relevant jurisdictional allegations, as well as the evidence offered in support thereof, the Court now considers whether this evidence is sufficient for the Court to exercise general personal jurisdiction over Defendants.

## III.   Discussion

In the present action, Pinnacle contends that this Court possesses general personal jurisdiction over Defendants because Defendants engaged in "continuous and systematic general business contact in Florida" as required by Florida's long-arm statute, see Response at 13 (citing Autonation, Inc. v. Whitlock, 276 F. Supp. 2d 1258, 1262 (S.D. Fla. 2003)), and as such, "the due process requirements of sufficient minimum contacts are also met[,]" see id. at 14 (citing Mold-Ex, Inc. v. Mich. Technical Representatives, Inc., No. 3:04-CV-307-MCRMD, 2005 WL 2416824, at *4 (N.D. Fla. Sept. 20, 2005)).[9]  Specifically, Pinnacle argues that general jurisdiction is properly exercised in this action due to: (1) the Individual Defendants attending biannual meetings in Florida; (2) Pinnacle providing Defendants with proprietary information and other trade secrets; (3) Pinnacle providing Defendants with "marketing materials, forms, and other necessary paperwork"; (4) Pinnacle providing

---

[9]   "Although an unpublished opinion is not binding . . ., it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Defendants with assistance and support in performing sales duties; and (5) Defendants regularly communicating with Pinnacle's Florida office on case management and insurance design work.  See id. at 13-14.  Of particular import to Pinnacle is the fact that its relationship with Defendants continued for nearly four years, as a defendant's activities "collectively, over a period of time" can be used to establish general jurisdiction. Id. at 13 (citing Whitlock, 276 F. Supp. 2d 1263).

Conversely, Defendants argue that an exercise of general jurisdiction is improper in this action because a defendant's contacts with the applicable forum must "be such that the defendant should reasonably anticipate being hauled [sic] into court there[,]" Motion at 17 (quoting Wallack v. Worldwide Mach. Sales, Inc., 278 F. Supp. 2d 1358, 1368 (M.D. Fla. 2003)), and also because "[a]n individual's contract alone with an out of state defendant does not automatically establish minimum contacts with the individual's home forum[,]" id. at 18 (quoting Wallack, 278 F. Supp. 2d at 1369).  In particular, Defendants attest that: (1) the Individual Defendants' only contact with Florida was via their handful of visits to Pinnacle's office in Jacksonville, Florida; (2) the Individual Defendants are not parties to the LOU individually, nor are they Florida residents; (3) none of the Defendants "operated, conducted, engaged in, or carried on any business" in Florida; and (4) all of Sehnoutka LLC's business activities were performed in Midwestern states, meaning Defendants "did not sell or solicit the sale of insurance" to any Florida residents.  See id. at 16, 18.

Notably, neither party references either Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011), or Daimler AG v. Bauman, ___ U.S. ____, 134 S. Ct. 746 (2014), the United States Supreme Court's decisions on general personal jurisdiction which

inform the Court's determination of the jurisdictional challenges presented here.  "Relying in large part on its decision in [Goodyear], the Daimler Court rejected as 'unacceptably grasping' the notion that a corporation is subject to general jurisdiction in every state in which it 'engages in a substantial, continuous, and systematic course of business.'" Erwin v. Ford Motor Co., No. 8:16-CV-01322-T-24AEP, 2016 WL 7655398, at *9 (M.D. Fla. Aug. 31, 2016) (quoting Daimler, 134 S. Ct. at 760).  In doing so, the Court made clear that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Daimler, 134 S. Ct. at 760.  With respect to an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Id. (quoting Goodyear, 564 U.S. at 925, 131 S. Ct. at 2853-54).  Alternatively, for a corporation, "it is an equivalent place, one in which the corporation is fairly regarded as at home." Id. (citation omitted).  "Since Daimler, the Eleventh Circuit has clarified that general jurisdiction is only appropriate over nonresident corporate defendants if 'the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.'" Erwin, 2016 WL 7655398, at *10 (quoting Carmouche, 789 F.3d at 1205).  In Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201 (11th Cir. 2015), the Eleventh Circuit – applying Daimler – explained that:

> [a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations, without offending due process when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State . . . And a corporation's operations in a forum other than its formal place of incorporation or principal place of business will be so substantial and of such a nature as to render the corporation at home in that State only in "exceptional" cases.

Id. at 1204 (internal citations and quotations omitted); see also Wolf v. Celebrity Cruises, Inc., ___ Fed. Appx. _____, 2017 WL 1149092, at *3 (11th Cir. Mar. 28, 2017) (per curiam) (citing Carmouche and noting that the court held in that case that "a [defendant's] connections with Florida – including a Florida bank account, two Florida addresses [], purchasing insurance from Florida companies, filing a financing statement with the Florida Secretary of State, joining a non-profit trade organization based in Florida, and consenting to jurisdiction in [Florida] – were not so 'continuous and systematic' as to render it essentially at home there."). Notably, the Supreme Court has described Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952), where a corporation relocated from the Philippines to Ohio to establish a "center of . . . wartime activities[,]" as an example of such an "exceptional case" which would permit the exercise of general jurisdiction under the post-Daimler paradigm. See BNSF Ry. Co. v. Tyrrell, 581 U.S. _____, 137 S. Ct. 1549, 1558 (May 30, 2017) (emphasizing the extraordinary circumstances necessary to find a corporation at home in a state other than one in which it is incorporated or has a principal place of business).

### A.    Sehnoutka LLC

Here, the parties agree that Sehnoutka LLC is not incorporated in Florida and that it does not maintain its principal place of business in Florida. See TAC ¶ 5; see also Motion at 2. As such, consistent with Daimler, the Court can exercise general jurisdiction over Sehnoutka LLC only if Pinnacle demonstrates that, when viewed in light of all of its activities, its contacts with Florida are so substantial as to qualify as an "exceptional case" in which it is effectively at home in Florida. Although Pinnacle alleges that Sehnoutka LLC has many

contacts with Florida, it has not shown that these contacts make Sehnoutka LLC "comparable to a domestic enterprise in [Florida]." Erwin, 2016 WL 7655398, at *11 (citing Daimler, 134 S. Ct. at 758 n. 11).  Accordingly, upon review of the Motion, Response, and accompanying documents, the Court determines for the reasons set forth below that this is not one of those "exceptional cases" where Sehnoutka LLC's operations in Florida are so substantial and of such a nature as to render the corporation effectively "at home" here. Carmouche, 789 F.3d at 1204.

In contending that this Court has jurisdiction, Pinnacle mistakenly places great weight on the role it played in Sehnoutka LLC's case management and insurance sales processes under the terms of the LOU, as opposed to Sehnoutka's contacts with Florida.  See generally Response.  Although the parties were operating pursuant to a contractual agreement, even before Daimler, courts recognized that "[a] [party's] contract alone with an out of state defendant does not automatically establish minimum contacts with the [party's] home forum." Wallack, 278 F. Supp. 2d at 1369 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985)).  This was so, at least in part, because a contract is considered an "intermediate step" linking prior negotiations with future business transactions, and as such, the courts focused on the parties' actual course of dealing under the contract in determining whether sufficient minimum contacts existed to justify a finding of personal jurisdiction.  See id. (citation omitted).  Additionally, "[a] plaintiff's unilateral contacts with the forum state cannot be imputed to the non-resident defendant in order to satisfy the requirement of contact with the forum state."  Id. at 1370 (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

In a pre-Daimler decision, the court examined the parties' course of conduct and found it to be insufficient to confer general jurisdiction.  See Rexam Airspray, Inc. v. Arminak, 471 F. Supp. 2d 1292 (S.D. Fla. 2007).  In Rexam, a plaintiff and a defendant, individually, entered into an agreement[10] whereby the defendant became an "independent sales representative" for the plaintiff in a territory that included a number of Western states. Id. at 1294, 1302.  After approximately six years, the relationship between the parties deteriorated, and the plaintiff filed suit for breach of contract in its home state of Florida.  See id. at 1293-94.  The defendants moved to dismiss the case based on a lack of personal jurisdiction.  Id. at 1293.  In resolving the dispute, the court first noted that neither the individual defendant nor her corporation had established a presence in Florida or was otherwise "qualified, registered, or licensed to do business" in Florida.  See id. at 1296.  The court also observed that the individual defendant made "around eight trips to Florida" over approximately six years for sales meetings, and that both the individual defendant and her corporation were provided with the plaintiff's letterhead and brochures for marketing purposes.  See id. at 1296-97.  Nevertheless, on balance, the court concluded that it lacked general jurisdiction over both the corporate and individual defendant in part because the plaintiff's contact with the forum could not be imputed to the defendants inasmuch as the defendants functioned as "non-exclusive independent sales representative[s]."  See id. at 1302.  In other words, the court determined that the nature of the defendants' long-term

_____

[10]    The agreement was subsequently amended to substitute the individual defendant's corporation, also a named defendant, as the contracting party.  Among other things, the agreement contained a confidentiality provision, a non-compete covenant, and a forum selection clause indicating that "[a]ny controversy, claim or dispute" between the parties would be heard in Florida.  See id. at 1294-95.

contractual relationship with the Florida-based plaintiff, which merely required defendants to find buyers for the plaintiff in markets other than Florida and service those relationships from out of state, resulted in contacts that were "far too attenuated' to support a finding of continuous and systematic contacts with the State of Florida []." See id. at 1303.  Thus, even in a pre-Daimler case employing a less rigorous standard for exercising general jurisdiction, the defendants' motion to dismiss was granted under circumstances similar to those present here.  Id. at 1303-04.

As Sehnoutka LLC also effectively functioned as an independent contractor of Pinnacle, a comparison with Rexam illustrates that the facts alleged here are insufficient to find that Sehnoutka LLC established "continuous and systematic" business contacts in Florida, let alone that it is essentially "at home" here.  Indeed, the similarities between the nature of the parties' contractual relationship here and in Rexam support the conclusion that Sehnoutka LLC's contacts with Florida are also far too attenuated to establish general jurisdiction.

Notably, many of Sehnoutka LLC's alleged contacts with Florida are, in reality, those of Pinnacle.  In particular, Pinnacle asserts that it exercised "significant oversight" over all Defendants in their role as contractors by: (1) ensuring compliance with third-party rules and requirements governing the marketing and sale of insurance products, see Ludwick Decl. ¶¶ 12-13; 23; and (2) processing applications for insurance coverage and ultimately designing and structuring insurance policies to be offered for purchase, see id. ¶¶ 19-21; Montolio Decl. ¶ 6.  Pinnacle further maintains that it assisted Sehnoutka LLC with lead generation, appointment scheduling, and follow-up assistance on sales leads, among other

things, and that all of the aforementioned actions occurred in Florida. <u>See</u> Ludwick Decl. ¶¶ 43, 45-46; Montolio Decl. ¶¶ 8, 9, 11; Freeman Decl. ¶ 14. Pinnacle also notes that all Raymond James financial advisors are governed by Raymond James' corporate headquarters in Tampa, Florida, regardless of where the advisors are physically located. Ludwick Decl. ¶ 40. But, neither Pinnacle's business activities in Florida – nor those of broker/dealer Raymond James – can be imputed to Sehnoutka LLC. <u>Wallack</u>, 278 F. Supp. 2d at 1370.

Pinnacle additionally suggests that a finding of personal jurisdiction is warranted as a result of Pinnacle providing Defendants with proprietary information and trade secrets – including customer contacts and information regarding its insurance design process – as well as non-proprietary marketing materials and other necessary paperwork. <u>See</u> Response at 10-11, 13-14. In response to this assertion, Defendants maintain that they did not use any of Pinnacle's marketing materials, did not market Pinnacle's services, and did not receive any confidential or proprietary information from Pinnacle at any time. <u>See</u> Sehnoutka Aff. ¶¶ 24, 33 ("Pinnacle's marketing materials would have been irrelevant to clients because it was not Pinnacle's services that were being sold or marketed, but rather the services of the various insurance carriers."), 34. In support of its position, Pinnacle cites to a number of pre-<u>Daimler</u> cases addressing the effect of parties sharing information with one another on determining the existence of general personal jurisdiction. <u>See, e.g.</u>, <u>AutoNation v. Hankins</u>, No. 03-14544 CACE (05), 2003 WL 22852206 (Fla. Cir. Ct. 2003) (discussing the impact of sharing "proprietary and confidential business information" including "corporate policies" and "marketing strategies" on the jurisdictional analysis);

Nordmark Presentations, Inc. v. Harman, 557 So. 2d 649 (Fla. Dist. Ct. App. 1990) (discussing the impact of sharing proprietary information and trade secrets, among other things, on the jurisdictional analysis).   However, given that these cases were all decided without the benefit of the Supreme Court's reasoning in Daimler, the Court questions their continuing applicability in determining whether Defendants' contacts with Florida are so exceptional so as to justify a finding of general jurisdiction.   Moreover, as previously discussed, even assuming the relevant information constitutes trade secrets[11], the Court cannot impute Pinnacle's conduct in sharing this information to Sehnoutka LLC.   See Wallack, 278 F. Supp. 2d at 1370.  Additionally, as for marketing, "[t]he Eleventh Circuit has made clear that sales and marketing efforts, even [when actively targeting Florida], are insufficient to render a nonresident company at home in Florida."   See Waite v. All Acquisition Corp., No. 15-CV-62359-BLOOM/Valle, 2016 WL 2346768, at *6 (S.D. Fla. Mar. 8, 2016) (analyzing Schulman v. Inst. for Shipboard Educ., 624 Fed. Appx. 1002 (11th Cir. 2015)).

Here, Defendants made unrebutted assertions that Sehnoutka LLC is an Illinois limited liability company with its principal place of business in Illinois.  It is not licensed to sell and did not sell or solicit the sale of insurance to any Florida residents.   See Sehnoutka Aff.

---

[11]         Specifically, with regard to confidential information and other trade secrets, the Eleventh Circuit has defined "trade secret" to include information not commonly known or available to the public and "which derive[s] independent economic value . . . from not being generally known to [or] readily ascertainable by proper means by" other parties who can obtain economic value from its use.  See, e.g., Advantor Sys. Corp. v. DRS Technical Servs., Inc., 678 Fed. Appx. 839, 853 (11th Cir. 2017) (citing Fla. Stat. § 688.002(4)).  The limited record before the Court suggests that Pinnacle's alleged confidential and trade secret information is publicly available, see Sehnoutka Aff. ¶ 35, and Pinnacle has offered no evidence to the contrary, see Ludwick Decl. ¶ 47.  Accordingly, by definition, this information would not qualify as trade secrets.  Advantor, 2017 WL 412624, at *12.

¶ 8.  Indeed, the LOU did not require Sehnoutka LLC to perform any of its obligations in Florida, and the record before the Court shows that almost all of Sehnoutka LLC's business activities were performed in various Midwestern states.  See id. ¶¶ 6-7. While it is true that Pinnacle provided Sehnoutka LLC with assistance and support from its headquarters in Florida, these contacts cannot be imputed from one party to another.  Similarly, although Pinnacle indicates that it provided Sehnoutka LLC with marketing materials, necessary paperwork, and other confidential and/or trade secret information, Pinnacle failed to demonstrate that such acts can be used as evidence of Sehnoutka LLC's systematic business contacts with Florida post-Daimler.  Additionally, although Pinnacle and Sehnoutka LLC communicated regularly and shared information regarding insurance applications and policy options throughout the duration of their contractual relationship, the evidence before the Court reflects that Sehnoutka LLC nevertheless functioned as an independent contractor – free from Pinnacle's direct control.  Finally, while Sehnoutka and Hersey both made less than a dozen trips to Florida on behalf of the corporation over the course of the parties' three and a half year relationship, under the post-Daimler paradigm, such trips for business-related activities do not constitute a "purposeful availment of the privileges of conducting activities here sufficient to render [the defendant] 'essentially at home.'"  See Recao v. Bell Helicopter Textron, No. 14-60202-CIV-ZLOCH, 2014 WL 12595302, at *4 (S.D. Fla. Sept. 23, 2014) (citing Aronson v. Celebrity Cruises, Inc., 30 F. Supp. 3d 1379, 1389 (S.D. Fla. 2014) ("[A]nnual trips to Florida to attend meetings . . . do not constitute 'substantial activity' in the state sufficient to establish general personal jurisdiction.")).

Two post-Daimler Eleventh Circuit cases are instructive.  In Carmouche, 789 F.3d 1201, the Eleventh Circuit considered a case in which a corporate defendant had a Florida bank account and two Florida addresses; purchased insurance from Florida companies; filed a financing statement with the Florida Secretary of State; joined a Florida-based trade organization; and even contractually-consented with a third party to jurisdiction in Florida. Id. at 1204.  Despite these facts, the court held that these connections were not "'so substantial' as to make this one [of] those 'exceptional' cases in which a foreign corporation is 'at home' in a forum other than its place of incorporation or principal place of business." Id. (quoting Daimler, 134 S. Ct. at 761 n. 19).  Similarly, in Fraser v. Smith, 594 F.3d 842 (11th Cir. 2010), the defendant – a commercial tour operator – advertised in several publications, including the Miami Herald; procured liability insurance through a Florida insurance agent; purchased a number of boats in Florida; and sent employees and representatives to Florida for training and to promote its services.  Id. at 846-47.  Ultimately, the court concluded "[a]fter considering all of [the defendant's] Florida contacts in aggregation" that they were nonetheless "insufficient to afford the Florida courts jurisdiction over claims totally unrelated to those contacts." Id. at 847.  Here, even when taken together, Sehnoutka LLC's connections with Florida are far fewer than those found insufficient in Carmouche and Fraser.  See Thompson v. Carnival Corp., 174 F. Supp. 3d 1327, 1335 (S.D. Fla. 2016) (noting that, "in light of [the comparison to] Carmouche, the Court would be hard-pressed to find" that the defendant was effectively "at home" in Florida.).

To conclude this analysis, one additional comparison is appropriate.  In JLIP, LLC v. Stratospheric Indus., Inc., No. 14-61798-CIV-COHN/SELTZER, 2014 WL 11776948 (S.D.

Fla. Dec. 17, 2014), the plaintiff argued that the defendants were subject to general jurisdiction in Florida because the defendants did "sufficient business" with Florida-based companies and "regularly communicated" with representatives from these companies for four years.  See id. at *2.  However, defendants had no office in Florida, were not licensed to do business in Florida, did not sell products to customers in Florida, and did not have any employees or assets in Florida.  See id.  Under these circumstances, the court determined that the plaintiff failed to demonstrate that the exercise of general jurisdiction over the defendants would satisfy the requirements of constitutional due process.  Id. at *1.  In doing so, the court summarized its reasoning in a manner that is just as applicable here as it was in JLIP:

> These facts, taken in the light most favorable to [the plaintiff], show that [the defendant] maintained a business relationship with a [Florida-based company] for a number of years.  But in the relatively recent opinions of [Goodyear] and [Daimler], the Supreme Court emphasized that more than business relationships in a forum – even relationships involving regular contacts, purchases, communications, and trainings – are necessary to subject a defendant to suit for claims unconnected to the defendant's forum-related activities.  Instead, a defendant must be functioning in the forum so substantially as to be "at home" there, for example by being incorporated in the forum or having its principal place of business in the forum.

See id. at *3 (internal citations omitted).  Here, Sehnoutka LLC's contacts are not so "continuous and systematic" as to render the company essentially "at home" in Florida as required to ensure compliance with the Due Process Clause.  Thus, consistent with the dictates of Daimler, the Court determines that Pinnacle has failed to demonstrate that the Court can exercise general jurisdiction over Sehnoutka LLC, and the Motion as to

-25-

Sehnoutka LLC is due to be granted to the extent that Sehnoutka LLC challenges the existence of personal jurisdiction.

### B.    The Individual Defendants

Next, the Court turns to the Individual Defendants' challenge to the existence of personal jurisdiction over them.  In the TAC, Pinnacle alleges that the Individual Defendants acted both "individually and as agents of Sehnoutka LLC" throughout the course of their business relationship with Pinnacle, and also that the Individual Defendants made written demands for compensation from Pinnacle in their individual capacities.  See TAC ¶ 8, 26, 29-30.  Perhaps viewing this as an attempt to "pierce the corporate veil" of Sehnoutka LLC for jurisdictional purposes, the Individual Defendants argue in the Motion that the "corporate shield doctrine" – which prohibits the exercise of personal jurisdiction over corporate employees whose only contact with the forum state was in furtherance of the corporation's interests – operates to bar the exercise of general jurisdiction over them.  See Motion at 19-21.  Indeed, Sehnoutka states that he was "at all times[] employed by Sehnoutka LLC and acting in his representative capacity . . . in his dealings with Pinnacle."  Motion at 20 (citing Sehnoutka Aff. ¶¶ 3, 8-10, 13-14, 18-20).  Hersey likewise asserts that she served as an independent contractor of Sehnoutka LLC and operated in this capacity at all times relevant to this action.  See id. (citing Hersey Aff. ¶¶ 3-4).  Although the corporate shield doctrine may be applicable here, the Individual Defendants' reliance on this doctrine is unnecessary in light of the Goodyear and Daimler decisions.

-26-

Notably, Goodyear and Daimler confirm that the paradigm forum for the exercise of general jurisdiction over an individual defendant is the individual's state of domicile. Daimler, 134 S. Ct. at 760; Goodyear, 564 U.S. at 924.  As neither of the Individual Defendants is domiciled in Florida, see TAC ¶¶ 3-4, the Court may appropriately conclude that it cannot exercise general jurisdiction over them.  See Baker v. Kinsey, No. 4:16-CV445-VEH, 2016 WL 3924222, at *1 (N.D. Ala. July 21, 2016) (quoting Goodyear, 564 U.S. at 924) (holding that, because the defendant was not a forum state domiciliary, "general jurisdiction is out"); see also Byrd v. Hishbach, LLC, No. 2:16-CV-01449-KOB, 2017 WL 2730399, at *4 (N.D. Ala. June 26, 2017) (concluding that the court lacked general jurisdiction over individual defendants where the defendants were not residents of, and did not own property or conduct business in, the forum state).

Moreover, even where a defendant's contacts with the forum state are arguably "substantial and not isolated[,]" such as when an individual owned part of a Florida business, previously resided in Florida, made occasional trips to Florida, and derived business revenue from Florida, these contacts nevertheless have been found to be insufficiently "continuous and systematic" to render the individual "essentially at home in the forum state" for the purposes of conferring general jurisdiction.  See Hard Candy, LLC v. Hard Candy Fitness, LLC, 106 F. Supp. 3d 1231, 1250-52 (S.D. Fla. 2015).  A review of post-Goodyear and Daimler case law supports this conclusion.  For example, in Duncanson v. Wine & Canvas Dev., LLC, No. 6:14-CV-704-ORL-40KRS, 2015 WL 12838359, at *18 (M.D. Fla. June 24, 2015), the court determined that occasional visits to Florida – even in one's

capacity as an employee – do not support the exercise of general jurisdiction over an individual defendant.    In <u>Ure v. Oceania Cruises, Inc.</u>, No. 14-21340-CIV-GAYLES/TURNOFF, 2017 WL 2378200, at *1-*2 (S.D. Fla. June 1, 2017), plaintiffs brought suit against a cruise line and its employee, a doctor, after an individual sought medical treatment from the doctor before suffering permanent injury and later dying from her illness. There, the court noted that the defendant-employee: (1) signed an employment agreement with a Florida-based forum selection clause; (2) attended training and conferences in Florida; (3) returned to Florida at the conclusion of each voyage; and (4) possessed a Florida bank account.  <u>See</u> <u>id.</u> at *3.  Even after considering all of these contacts together, the court determined that the doctor did not have "systematic and continuous contact" such that he was effectively "at home" in Florida.  <u>Id.</u>  More recently, in <u>McCullough v. Royal Caribbean Cruises, Ltd.</u>, No. 16-CV-20194-GAYLES, 2017 WL 3115751, at *9 (S.D. Fla. July 21, 2017), the defendant-employees: (1) regularly communicated with their employer in Miami; (2) submitted invoices to their employer's Miami corporate headquarters; (3) received a cell phone with a Miami-based area code; (4) used their employer's letterhead for sending mail; and (5) regularly held themselves out as corporate employees.  However, neither defendant was a citizen of Florida.  <u>Id.</u>  On balance, the court determined that none of these contacts were sufficient to make Florida the equivalent of the defendants' domicile – "the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom."  <u>Id.</u> at *10 (quoting <u>McCormick v. Aderholt</u>, 293 F.3d 1254, 1258 (11th Cir. 2002)).

Here, both Individual Defendants maintain that they are not and have never been residents of Florida, see Sehnoutka Aff. ¶ 2; Hersey Aff. ¶ 9, that they do not conduct any business in Florida on an individual basis, see Sehnoutka Aff. ¶9; Hersey Aff. ¶ 5, and that their travels to Florida were in furtherance of the business of Sehnoutka LLC and not in their individual capacities, see Sehnoutka Aff. ¶ 19; Hersey Aff. ¶ 6.  Pinnacle offers no evidence to contest these assertions.  Instead, Pinnacle emphasizes the quantity and nature of its communications with the Individual Defendants – purportedly indicating a close working relationship between the parties – as a justification for a finding of personal jurisdiction over them.  See generally Response.  Specifically, Pinnacle points to scheduled weekly calls and "almost daily" e-mail exchanges as evidence of the Individual Defendants' constant contact with Pinnacle.  See id. at 9.  However, "continuous communications" and a "continuous business relationship" with a Florida-based plaintiff do not equate to "sufficient minimum contacts with the forum state to satisfy constitutional due process requirements."  See, e.g., S.O.S. Res. Servs., Inc. v. Bowers, No. 14-22789-CIV, 2015 WL 2415332, at *3 (S.D. Fla. May 21, 2015) (citing Sculptchair, Inc., 94 F.3d at 626).

Additionally, many of the cases cited by Pinnacle in support of the exercise of general jurisdiction over the Individual Defendants concern defendant-employees whose contacts with Florida arose out of a direct employment relationship with their plaintiff-employer.  See, e.g., Whitlock, 276 F. Supp. 2d at 1261 (finding sufficient minimum contacts where a Florida-based plaintiff provided its defendant-employee with ongoing instruction regarding his duties and responsibilities as an employee); Nordmark, 557 So. 2d at 650-51

(finding sufficient minimum contacts where a Florida-based plaintiff provided its out-of-state defendant-employee with "proprietary information, trade secrets, managerial training and assistance, and regular direct[ion] and supervis[ion]" of his daily activities).  Although the contacts between the plaintiffs and their employees in those cases may have been viewed as sufficient to confer general jurisdiction before <u>Goodyear</u> and <u>Daimler</u>, more recent authority warrants a contrary conclusion here.[12]  <u>See, e.g.,</u><u>McCullough</u>, 2017 WL 3115751, at *9-*10; <u>Ure</u>, 2017 WL 2378200, at *3.  Indeed, at least one court has concluded that the fact that a defendant "has a certain number of contacts in Florida by virtue of his employment is immaterial" to the general personal jurisdiction analysis. <u>McCullough</u>, 2017 WL 3115751, at *10.  In sum, the Individual Defendants have successfully demonstrated that their contacts with Florida are relatively insubstantial such that Florida is not the functional equivalent of their states of domicile.  As such, Pinnacle failed to carry its burden of proving the Court can exercise personal jurisdiction over the Individual Defendants, and the Motion to dismiss Pinnacle's claims against them is due to be granted.[13]

---

[12]     Additionally, while Pinnacle maintains that it had "significant oversight over the [Individual] Defendants in their roles as contractors of Pinnacle[,]" Response at 3, Pinnacle cites no post-<u>Goodyear</u> or <u>Daimler</u> authority indicating that an employer's supervision and control of a non-resident defendant's daily work activities is sufficient to invoke general personal jurisdiction over that individual in the forum state, <u>see generally</u> Response.

[13]     As Pinnacle has failed to satisfy the "minimum contacts" prong of the due process analysis, the Court need not determine whether the exercise of personal jurisdiction over Defendants would comport with traditional notions of fair play and substantial justice.  <u>See</u> <u>Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC</u>, 139 Fed. Appx. 140, 144 n.4 (11th Cir. 2005) ("Because we conclude that there were insufficient minimum contacts for the exercise of personal jurisdiction over [defendant], we need not address [the fair play and substantial justice] requirement.").

## IV.    Conclusion

For the foregoing reasons, the Court determines that this is not one of those "exceptional cases" where Defendants' contacts with Florida are so substantial as to render them effectively "at home" here, and consequently that the Court's exercise of personal jurisdiction over Defendants in this action does not comport with the requirements of the Due Process Clause.  Therefore, the Court concludes that the Defendants' Motion is due to be granted and Pinnacle's claims against Defendants are due to be dismissed without prejudice for lack of personal jurisdiction.[14]  In light of the foregoing, it is

**ORDERED**:

1.    Defendants' Motion to Dismiss Third Amended Complaint (Doc. No. 31) is **GRANTED**.

2.    This action is **DISMISSED WITHOUT PREJUDICE**.

3.    The Clerk of the Court is directed to terminate all pending motions and close the file.

**DONE AND ORDERED** at Jacksonville, Florida on July 27, 2017.

**MARCIA MORALES HOWARD**
United States District Judge

---

[14]    As a result, the Court will not consider Defendants' substantive arguments regarding the TAC.

lc24

Copies to:

Counsel of Record